IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Isaac T.L. Gould, Sr., | ) |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Williams County, Sheriff Scott Busching, and Lieutenant Royce Crone, | ) Case No. 4:14-cv-018 |
| Defendants. | ) |

Before the court is a Motion for Summary Judgment (Doc. No. 64) filed by defendants Williams County, Sheriff Scott Busching, and Lt. Royce Crone.[1] The motion has been referred to the undersigned for preliminary consideration. For the reasons set forth below, it is recommended that defendants' motion be granted and plaintiff's complaint be dismissed with prejudice.

## I. BACKGROUND

### A. Procedural background

Plaintiff, Isaac Gould, Sr. ("Gould"), is currently an inmate at the North Dakota State Penitentiary ("NDSP") in Bismarck, North Dakota. At the time Gould initiated this action on February 18, 2014, however, he was a pretrial detainee at the Williams County Correctional Center ("WCCC") in Williston, North Dakota.

Gould initiated this action pursuant to 42 U.S.C. § 1983 by submitting a *pro se* complaint alleging claims of federal constitutional violations against the State of North Dakota, the WCCC and

---

[1] The caption refers to Royce Crone as a Lieutenant. According to defendants, Crone has since stepped down from that position but remains a correctional officer at the Williams County Correctional Center with a rank of sergeant. However, to avoid confusion here, he will be referred to as Lt. Crone

1

Fairlight Medical Center in Williston. (Doc. No. 6). Later, following an initial screening in which it was concluded that Gould should not be permitted to proceed as to the parties initially named, Gould filed an Amended Complaint naming new parties. (Doc. No. 12). The court then conducted a screening of the Amended Complaint and Gould was permitted to proceed with his Eighth Amendment claims of deliberate indifference with respect to his medical treatment as to the current defendants Williams County (in place of the WCCC because it is not a suable entity) and Sheriff Busching and Lt. Crone, both in their official and individual capacities. (Doc. No. 14).

One of Gould's complaints is that defendants violated his Eighth Amendment rights by not immediately providing him with surgery on his foot. On October 2, 2014, Gould filed a motion requesting a preliminary injunction directing defendants to immediately provide him with the surgery. (Doc. Nos. 41-42). On December 9, 2014, the undersigned issued a Report and Recommendation that the request for a preliminary injunction be denied because Gould had failed to demonstrate an immediate need for the surgery. (Doc. No. 55). The court adopted the Report and Recommendation on January 7, 2015, and denied the request for the preliminary injunction. (Doc. No. 56).

Defendants subsequently filed a motion for summary judgment. (Doc. No. 64). After being granted an extension, Gould filed a response to which defendants have replied. (Doc. Nos. 74 & 75). In addition, since the motion for summary judgment became ripe, Gould filed a request and amended request for a subpoena to the NDSP for medical records generated there that he claims will help substantiate why the surgery was needed on his foot during the time period he was held at the WCCC. (Doc. Nos. 77 & 79).

2

## B. Factual background

Gould complains in this action that defendants violated his constitutional rights by denying him adequate medical care with respect to a finger on his right hand and to his right foot. Of the two, Gould's problem with his foot is more significant. In approximately 1996, Gould suffered a fracture of the 2nd metatarsal bone in his right foot. The fracture went untreated surgically until either 1999 or 2000 when surgery was performed. A second surgery was performed in 2006 or 2007, but there was a nonunion of the fracture according to a medical report discussed in detail later. When Gould was arrested and placed in custody at the WCCC on August 8, 2013, the fracture site was being held in alignment by a plate and four screws. (Doc. No. 66-2).

The record contains an early nursing note dated September 3, 2013, in which Gould presented with a number of pain complaints, including hip pain, pain in his lower left rib cage, and right foot pain. The examination conducted at that time revealed, among other things, that plaintiff walked with a normal gait, that he had full range of motion in his extremities, and no numbness or tingling in his extremities. Gould was approved for pain relief medication and was referred to an MD for further evaluation and treatment. (Doc. No. 53-3).[2]

The next reference in the record here to any finger or foot complaints by Gould is a request for medical care on February 25, 2014. Gould made the request using the WCCC's standard request for medical care form in which he stated that he had "pain in both [right foot, and third digit on right

---

[2] Apparently, Gould and his wife were dissatisfied with this and complained to the North Dakota Department of Corrections and Rehabilitation (NDDOCR), which has some oversight over county jails, including the WCCC, for compliance with state jail rules. See N.D.C.C. ch 12-44.1. Specifically, the complaint was that Gould was very ill including running a fever and being in severe pain. In response, a contract nurse for the WCCC advised an investigator for the NDDOCR that Gould had been examined by the WCCC's contract medical care providers and that there were no objective findings consistent with his complaints. The nurse expressed the opinion that Gould and his wife were claiming "medical negligence" in order to leverage a lower bond. (Doc. No. 53-5). The NDDOCR's investigator ultimately concluded that the complaints being made by Gould and his wife were unfounded and that he was receiving adequate medical care at the time. (Doc. No. 53-4).

3

hand] quite bad." (Doc. No. 12-5). In response, Gould was seen in the jail by a medical professional on March 4, 2014. The notes from this examination reference the complaint of right foot pain and the history of the prior fracture with a plate in place. In terms of treatment, there is reference made to followup with Dr. Slann (a local podiatrist whom Gould had seen earlier) and a decision to continue anti-inflammatory pain medication. (Doc. No. 12-5).

The same day Gould was seen for the complaints he made in his medical care request of February 25, 2015, Gould submitted another medical request complaining again about his foot but more focused this time on the third digit of his right hand. In that request dated March 4, 2014, Gould stated that, in both his foot and finger, he was "having extreme swelling/burning sensations where both bones are broken and unattended. These need tending too. The pain is getting more so too and nerves irritated more in other areas of right hand." Gould was again seen by a medical professional who noted, among other things, the history of "deformity" and prior "fracture" of right hand and ordered an appointment with Dr. Roxanne Keene, a local orthopedic surgeon, for evaluation and treatment of the finger. (Doc. No. 12-6).

Gould claims that he submitted another request for medical care dated April 11, 2014, in which he again complained about continuing pain in his foot and finger. At the bottom of the form, there purports to be a recommendation by the medical professional who saw Gould and stated that he be released for medical care for his foot and right hand. (Doc. No. 12-4). Defendants have disputed the authenticity of this document. But, whether authentic or not, it does not make a difference in terms of the outcome of this case.

It is undisputed that Gould saw Dr. Keene for his finger, although the record here does not reveal when this took place. Dr. Keene's recommendation for Gould's finger issues was physical

4

therapy. (Doc. No. 12, p. 5). Defendants have also proffered evidence (which Gould has not objected to or disputed) that Lt. Crone discussed with Dr. Keene the difficulties of transporting Gould frequently for physical therapy and that Dr. Keene advised that the therapy did not need to be conducted by a physical therapist, that Gould could perform the exercises in his cell himself, and that Gould knew how to do them. (Doc. Nos. 67 & 74).

The next item of record evidence is a medical request submitted by Gould on June 16, 2014. Gould reported that "the pain in (R) foot from break area is moving/staying round first toe-nagging aching pain in ankle/calf" and the pain in his right foot is constant. He also reported pain in his lower back; left hip and knee; and complained that his third finger on his right hand was cramping. Gould was seen by a medical professional for these complaints on June 19, 2014. Gould requested at that time an appointment with Dr. Slann, a local podiatrist that Gould had been consulting with earlier, to see about the possibility of getting inserts for his shoes for comfort until progress was made on his surgery. The notes for Gould's June 19, 2014 examination have written next to the mention of an appointment with Dr. Slann the date of June 24, 2014 at 3:00 p.m. Defendants suggest this indicates Gould saw Dr. Slann at that point and that this was Lt. Crone's recollection. Gould has not disputed this. (Doc. Nos. 66-4, 67, & 74).

On July 15, 2014, Dr. Slann wrote a letter to Lt. Crone. Because Gould primarily relies upon this letter in his response to defendants' motion for summary judgment (Doc. No. 74), it is set forth in full as follows:

WILLISTON FOOT & ANKLE CLINIC
Guy K. Slann, DPM

July 15, 2014

Dear Lieutenant Royce Crone,

> As we discussed I am writing in regard to my patient, Isaac T. L. Gould. I am writing to you to explain his medical requirements specifically on his right foot. I am a podiatrist and therefore any medical concerns that do not involve the leg, ankle, and/or foot are not treated by me.
>
> Mr. Gould related that he suffered a fracture of the right 2nd metatarsal bone in approximately 1996. The fracture went untreated surgically until either 1999 or 2000. Surgery was again performed in 2006 or 2007.
>
> My examination reveals that Mr. Gould has a plate and 4 screws fixated to his right 2nd metatarsal. X-rays reveal that there is a non-union of the bone directly inferior to the midpoint of the plate. Therefore, the bone is primarily being kept in alignment by the hardware as it is fractured. It is unclear how long the bone can be maintained in alignment with the hardware intact as there is movement at this fracture site. The movement of the bone and hardware as well as the inability of the bone to bear weight is causing Mr. Gould pain.
>
> Surgical treatment is recommended. Surgery is likely to consist of removal of the hardware, debridement of the proximal and distal fracture sites, implantation of bone graft and fixation with a new plate and screws. While the skin and soft tissue would be expected to heal within two or three weeks, the bone could easily take six to eight weeks to heal if there are no complications. During this period, Mr. Gould will need to be non-weight bearing on his right foot.
>
> While Williston, North Dakota is not an ideal location for this surgery I appreciate the difficulty in obtaining treatment for an inmate outside of Williston. I am willing to perform the surgery in Williston, at Mercy Medical Center. The necessary hardware and bone graft would need to be procured and placed into inventory for use in the surgery. A Mercy patient financing advisor has explained to me that the patient would need to apply for financial approval of the surgery before I could perform it or have them order any necessary items. I do not know and am not involved in any financial arrangements that may exist or be necessary between your facility and Mercy Medical Center. Following surgery, I expect up to an eight week period of recovery. It could be more or less time and complications are always possible but this is the estimated time for bone healing. Strict compliance with my instructions following surgery will give Mr. Gould the greatest chance of the best possible outcome.
>
> Please use this letter as necessary to assist in finding a resolution to this situation. Please advise me when we may proceed or if any questions arise at phone: number 572-4094.
>
> Sincerely,
>
> Guy K. Slann, DPM

(Doc. No. 66-2).

It is not entirely clear from the record when Gould first made defendants aware of Dr. Slann's recommendation that he have surgery on his foot. Attached to Gould's amended complaint is a copy of a letter from Dr. Slann to Gould's attorney dated February 26, 2014, that reads virtually

6

the same as the above letter to Lt. Crone. Defendants, however, were not served with the amended complaint until the end of May 2014 and that pleading was the first one served on them following completion of the court's screening process as noted earlier. (Doc. Nos. 15-22). Gould also alleges in his amended complaint that he attempted to give Sheriff Busching a copy of the letter on April 2, 2014, but that Sheriff Busching refused to take a copy of it at that time, stating he would discuss it with him later, which, according to Gould, did not take place. Finally, the text of Dr. Slann's letter makes reference to a prior conversation between Lt. Crone and himself.

On July 30, 2014, Gould filed another medical request complaining of "increased pain in right foot and swelling in shin/calf area." Gould also complained that his "right hand third digit cramping and hurting." Gould was seen by a medical professional on July 31, 2014, who ordered that Aleve be taken "twice daily, until transferred or released." (Doc. No. 66-3).[3]

On August 14, 2014 Gould filed an inmate grievance form in which he claimed that he was being refused medical services; specifically that the nurse refused to see him on August 7, 2014, and August 14, 2014. Gould also requested that the nurse, Breanna Paulson, "get the needed prescriptions, and talk to Lieutenant [C]rone and find out why being refused medical treatment and if my foot is stated to be fixed or why ignoring minor or serious medical needs." Under the informal resolution recommendation part of the inmate grievance form it states "your foot will be taken care of when the financing for the operation is approved. There is nothing more that can be done for your finger other than the exercises the Dr. has given you to do." It is dated August 18, 2014 and signed by "LT." It also states "I will check with the nurse on your medication concerns." (Doc. Nos. 66-5).

---

[3] As discussed later, Gould had entered his plea of guilty by this date and the likelihood was that he would be leaving the WCCC upon sentencing, either because of release or transfer to one of the NDDOCR's facilities for housing prisoners longer term, such as the NDSP, if he was sentenced to imprisonment.

As noted earlier, Gould filed a request for a preliminary injunction on October 2, 1014, requiring that defendants provide him with surgery on his foot. The court denied this motion on January 7, 2015.

Gould was transferred to the NDSP on February 19, 2016, shortly after he was sentenced. ( Doc. No. 62-1).

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party has the burden to show the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P 56(c). To avoid summary judgment, the nonmoving party must respond with evidence that shows a genuine issue of material fact. Torgerson, 643 F.3d at 1042 (citing Celotex Corp., 477 U.S. at 324); Fed. R. Civ. P 56(c). The evidence and the inferences which reasonably may be drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Young v. Builders Steel Co., 754 F.3d 573, 577 (8th Cir. 2014). However, the non-moving party may not merely rely on unsupported, self-serving allegations to avoid summary judgment. Davidson & Associates v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

III.    **DISCUSSION**

8

### A. Pretrial detainee's constitutional right to medical care

A pretrial detainee's right to medical care arises under the Due Process Clause of the Fourteenth Amendment. In the Eighth Circuit, the deliberate-indifference standard governing claims by convicted prisoners under the Eighth Amendment is applied to a pretrial detainee's Due Process claim of inadequate medical care. See, e.g., Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). To prevail on a claim of constitutionally inadequate medical care under the deliberate-indifference standard, an inmate must prove both an objective and a subjective component: (1) that the inmate suffered from an objectively serious medical need, and (2) that prison officials actually knew of the need and deliberately disregarded it. Id.

"To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Id. (internal quotations eliminated). Under the subjective prong, deliberate indifference requires a showing of a mental state that is more than simply negligence or even gross negligence. Rather, it is akin to criminal recklessness– "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Farmer"); see Jackson, 756 F.3d at 1065. Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Popoalii, 512 F.3d 488, 499 (8th Cir. 2008) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

### B. Gould's complaint about lack of care for his finger

When Gould complained about his finger, he was seen first by medical professionals at the WCCC. They referred him to Dr. Keene, an orthopedic surgeon, who conducted her own

9

examination and prescribed physical therapy to treat the finger. When Lt. Crone explained the difficulty of having to transport Gould frequently for physical therapy, Dr. Keene advised that Gould could perform the required exercises in his cell himself. Also, in addition to this treatment, Gould was prescribed non-narcotic pain relievers to address the discomfort in both his finger and foot. Given this and the failure of Gould to present any evidence that something more was medically required, no reasonable jury could conclude that any of the named defendants acted with deliberate indifference with respect to Gould's finger complaint.

    **C.    Gould's complaint about the lack of a surgery for his foot**

Gould's foot problem presents a closer question given that: (1) his podiatrist recommended that surgery should be performed at some point to address the nonunion of the old fracture in his foot, (2) defendants did not proffer any medical evidence disagreeing with that conclusion, and (3) the reason why defendants did not provide the surgery remains murky. But, even if defendants had simply decided to "run out the clock" and not provide the surgery while Gould was temporarily incarcerated at the WCCC, this would not have amounted to deliberated indifference under the circumstances then existing for the following reasons:

First is the nature of Gould's foot problem and the lack of evidence that it needed to be performed immediately. As Gould's podiatrist explained in his letter, Gould fractured his right 2nd metatarsal bone in his foot some eighteen years earlier and the fracture had never properly healed, even with two prior surgeries, the last of which was performed some seven years earlier. The podiatrist explained that the bone was currently being held in alignment at the fracture site by a plate and four screws, with the current issues being that placing weight on the foot was causing some pain and it was unclear how long the present alignment could be maintained. And, while he recommended that another surgery be attempted followed by strict limitations on use of the foot for

an extended eight-week healing time, he did not say that surgery needed to be performed immediately, that there was a substantial risk in waiting until after Gould's trial or other disposition of his case, or that any risk could not be reasonably mitigated in the near term by Gould staying off his foot either altogether or in substantial part by the use of crutches, a walker, or even a wheelchair.

Second is the setting. The Williams County Jail is not a long-term holding facility and, for that reason, is not as well equipped to deal with prisoners who need surgery and followup care as longer-term facilities like the NDSP, for example. Also, Gould's podiatrist stated that performing the surgery in Williston (as opposed to one of North Dakota's medical centers like where the NDSP is located, for example) would not be ideal, apparently due to its difficulty in terms of removing the old hardware, installing new hardware, obtaining bone for grafting, and then performing the bone graft.

Third, coupled with the fact that Gould's podiatrist did not state that surgery needed to be performed immediately, it would not have been unreasonable for defendants to have concluded that the prudent course of action under the circumstances would be to wait on the outcome of Gould's criminal proceeding. If Gould was convicted and sentenced to prison, then the State could see to this medical issue and would be better able to handle it in a more desirable setting and with more resources. And, if Gould was not convicted, he would then be free to pursue the surgery wherever he wished.

Fourth, during the time period in question, defendants could have reasonably expected that Gould's detention in Williams County was likely not going to be much longer. Even the record here (as sparse as it is in terms of what was going in Gould's criminal proceeding during the time period question) reflects that Gould was transferred to the NDSP at the end of February 2015 following being sentenced. This means defendants would have known well before that time that Gould likely

11

would soon be moving on since before the postsentence transfer there would have been either a trial or plea of guilty as well as most likely a presentence investigation ("PSI"). In fact, a review of publically available state-court records, which this court can take judicial notice of, reflects that:

- Gould filed a speedy trial demand on May 27, 2014.

- A pretrial conference set for July 16, 2014, and trial on July 22, 2014 were cancelled as result of Gould intending to enter a plea, which was entered on July 22, 2014

- A presentence investigation was ordered on July 23, 2014.

- Gould moved on November 19, 2014, to withdraw his plea of guilty and the motion was denied on December 3, 2014.

- The PSI was filed on December 12, 2014.

- Gould was sentenced on February 6, 2015, and the criminal judgment was entered on February 9, 2015.[4]

See State of North Dakota, Register of Actions, Case Nos. 53-2013-CR-01687 (terrorizing and reckless endangerment) & 53-2014-CR-00196 (aggravated assault).[5]

In short, during the time period from when defendants became aware of the recommendation for surgery by Gould's podiatrist, defendants could reasonably have expected that Gould's continued stay in the Williams County jail was likely going to end soon and that, given the nature of the problem and lack of any indication that surgery needed to be performed immediately, it was prudent

---

[4] While Gould has not yet had an opportunity to address these additional facts, he can present any arguments that he might have with respect to whether judicial notice should be taken, whether these records have been properly construed, and the relevance of the records to this action in his objections to this Report and Recommendation if Gould elects to object.

[5] The dockets of these cases reference other related charges that were dismissed as a result of the pleas that were entered. The records can be accessed by going to the North Dakota Supreme Court's website, clicking the link for the District Court Case/Calendar Search Docket, and then searching for Gould's name under Northwest District.

to wait. And the fact this would have been reasonable is inapposite to a conclusion that defendants were deliberately indifferent.

But, even if the undersigned is wrong and it could be concluded that the delay in affording surgery was unreasonable, Gould has demonstrated at the most negligence and not criminal recklessness. This is because Gould has failed to present enough evidence for a jury to be able to reasonably infer that defendants actually knew there was a substantial likelihood that he would suffer further injury if the surgery was not soon provided, even if that did later occur. See Farmer, 511 U.S. at 833 (deliberate indifference exists where official fails to act despite knowing that inmate faces "a substantial risk of serious harm"); Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011) ("A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis.") (internal quotations omitted).

### D. Qualified immunity

For the reasons expressed above, Sheriff Busching and Lt Crone should be accorded qualified immunity. The mere grant of qualified immunity to these defendants would not by itself end the case, however, since contested fact issues would remain with respect to Sheriff Busching's level of knowledge and he would be the final decision-maker insofar as holding Williams County liable. See N.D. Const. Art. VII, § 8; N.D.C.C. §§ 11-10-20, 11-15-03. In addition, there may be fact issues with respect to whether, under the circumstances, Lt. Crone was a final decision-maker.

### E. Gould's requests for the issuance of subpoenas

Gould has recently submitted a request and amended request for subpoenas directed to the NDSP for medical information that has been generated there. It appears from his requests that there

13

was further evaluation of his foot and that there will be surgery. Gould claims that the additional medical records will demonstrate that he has suffered adverse consequences as result of the surgery not having been done earlier. Even if that may be true, it would not change the result under the particular circumstances of this case since this information was not made known to the defendants here and at the most would bear only upon a question of negligence, but not the subjective element of deliberate indifference.

## IV.  RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 64) be **GRANTED** and that Gould's complaint be **DISMISSED WITH PREJUDICE**; and

2. Plaintiff's request and amended request for a subpoena (Doc Nos. 77 & 79) be **DENIED AS MOOT**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 24th day of March, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
